# IN THE COURT OF APPEALS OF IOWA

No. 18-0098
Filed May 15, 2019

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**LARRY DEANDRE RATLIFF JR,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, William P. Kelly, Judge.


　　　　Larry Ratliff Jr. appeals his convictions of murder in the first degree, willful injury causing serious injury, and assault with intent to inflict serious injury. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**



　　　　Mark C. Smith, State Appellate Defender (until withdrawal), and Theresa R. Wilson, Assistant Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.


　　　　Considered by Vogel, C.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A jury convicted Larry Ratliff Jr. of first-degree murder, willful injury causing serious injury, and assault with intent to inflict serious injury. On appeal, Ratliff challenges the sufficiency of the evidence supporting his convictions. He also asserts his trial counsel provided ineffective assistance by failing to object to faulty jury instructions. Ratliff also contends the district court abused its discretion in admitting cumulative and unduly prejudicial photographs into evidence.

## I.      Background Facts and Proceedings

Upon the evidence presented at trial, a reasonable jury could make the following factual findings. During the late evening hours of April 11, 2017, police responded to a call of shots fired in the 4000 block of Fagen Drive in Des Moines. When officers arrived, they discovered a vehicle in a parking lot with two injured individuals, Antonio Quinn and Michael James Jr. James was shot in the arm but able to walk around and speak with officers. Quinn was seated in the vehicle's driver's seat and covered in blood from gunshot wounds to his chest, arm, and neck. Officers noted three bullet holes to the vehicle in the driver's side windshield, rear-view mirror, and A-pillar. Quinn ultimately succumbed to his injuries. During their investigation, police determined Molly Peter drove Ratliff to the parking lot where he was to meet Quinn for a drug transaction. Ratliff took an AK-47 type semiautomatic rifle with him. The trial testimony differs as to what occurred after the two vehicles arrived at the parking lot.

During the initial police investigation, Ratliff provided multiple and inconsistent accounts of his whereabouts on the night of the shooting, initially claiming no knowledge of the shooting or the gun, and he was out of town that

entire evening. Once police confronted Ratliff that the gun believed to be the murder weapon was found hidden in his vehicle and his phone records did not match his account of his whereabouts, Ratliff changed his version of events several times. His versions included claiming the person who actually committed the crime gave him the gun after the shooting in order to dispose of it and he only acted as a lookout for the actual shooter. At trial, Ratliff admitted he had received the gun prior to the shooting and took it along with him to the parking lot for a drug transaction where he was to sell cocaine and ecstasy. He asked Peter to drive him and, after arriving at the parking lot, he exited the vehicle and went to speak with Quinn, who sat in the driver's seat of his vehicle. Ratliff and Quinn discussed the drug transaction, and Ratliff asked Quinn to pay him in smaller bills. Ratliff then claimed he believed Quinn was reaching for a weapon so he grabbed his gun and pointed it at Quinn. Quinn then grabbed for the gun and wrestled with him for it, which Ratliff claimed caused the gun to accidentally fire. He then left the scene. After his arrest, Ratliff attempted to send a note to Peter asking for witnesses to prove another person committed the shooting and a letter telling her "don't let them bully you into saying nothing. Remember the best comment is no comment."

James's version was that he and Quinn went to the parking lot in order for Quinn to sell ecstasy that James had obtained for him. He saw Ratliff exit the passenger side of the vehicle that pulled up alongside Quinn's vehicle and walk over to the driver-side window, where Quinn was located. James recognized and was familiar with Ratliff but Quinn was not. After a discussion about the money and the drugs, Ratliff did ask for change, after which Ratliff claimed he needed to get something from the other vehicle. James saw Ratliff reach into the passenger-

side window and turn back with a rifle. Ratliff pointed the gun at Quinn and stated "Let me get all of that." Quinn then grabbed the gun barrel and tried to wrestle it away from Ratliff. At that point, James reached for the door handle on his side of the vehicle and heard a shot. After looking back, he saw Quinn lying in his seat, holding his body and gasping for air. Quinn told James he could not move. James then saw Ratliff at the front of the vehicle where he shot again. At that point, James exited the vehicle and ran away. When he turned around, he saw Ratliff get in the other vehicle and leave the scene. James ultimately admitted to police that he knew who Ratliff was and knew there was going to be a drug transaction.

The State charged Ratliff and Peter in a joint trial information with first-degree murder, first-degree robbery, and attempt to commit murder.[1] A jury trial was held in December 2017, during which Ratliff testified on his own behalf. The jury returned verdicts finding Ratliff guilty of first-degree murder and two lesser-included charges: willful injury causing serious injury to Quinn and assault with intent to inflict serious injury to James. The court subsequently sentenced Ratliff to life in prison on the murder charge. As noted, Ratliff appeals.

**II.      Analysis**

A.      Sufficiency of the Evidence

Ratliff contends the jury verdicts were not supported by sufficient evidence. We review sufficiency-of-evidence challenges for correction of errors at law. *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017). "[W]e will uphold a verdict if

---

[1] Ratliff was also charged with possession of a firearm by a convicted felon. This charge was severed from the other counts for purposes of trial. After trial, the court dismissed the charge against Ratliff without prejudice based upon the State's motion. The trials of Ratliff and Peter were also severed.

substantial evidence supports it." *Id.* "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Id.* (quoting *State v. Reed*, 875 N.W.2d 693, 704–05 (Iowa 2016)). "The evidence must do more than raise 'suspicion, speculation, or conjecture' regarding defendant's guilt." *State v. Randle*, 555 N.W.2d 666, 671 (Iowa 1996) (quoting *State v. Barnes*, 204 N.W.2d 827, 829 (Iowa 1972)). "We consider all the record evidence, not just the evidence that supports the verdict." *State v. Biddle*, 652 N.W.2d 191, 197–98 (Iowa 2002).

Ratliff focuses his challenges on the intent element of each offense, arguing the State failed to establish the requisite intent.

### 1. First-Degree Murder—Malice Aforethought

To convict Ratliff of first-degree murder, the instructions required the jury to find: (1) Ratliff shot Quinn; (2) Quinn died as a result of being shot; (3) Ratliff acted with malice aforethought; and (4) Ratliff "acted willfully, deliberately, premeditatedly and with a specific intent to kill [Quinn]." Ratliff argues the evidence is insufficient to prove he acted with the requisite malice aforethought and specific intent.

As an initial matter, the State argues Ratliff did not preserve error on his claim of insufficient evidence on this element. Ratliff urges us to consider the challenge as a claim of ineffective assistance of counsel in the alternative.

Ratliff orally moved for judgment of acquittal after the State completed its case-in-chief, arguing:

> Specifically our client is charged with three different counts: First-degree murder, attempted murder, and robbery in the first degree. And the State's evidence has failed to establish the requisite

intent that is needed for each of those crimes. Each of those crimes has a specific intent element to it, and the State has failed to establish that.

. . . .

But they have not proven that our client's actions that night support its theory that he had the specific intent to commit a robbery and attempted murder or murder in the first degree.

The court denied the motion, concluding, "The evidence presented by the State as to each essential element of the crime has been substantial." Ratliff renewed his motion at the end of the trial but before the jury began its deliberations based upon the same arguments as the earlier motion. The court again denied the motion.

"[A] defendant's motion for judgment of acquittal only serves to preserve error on a claim of insufficient evidence for appellate review in a criminal case if it 'identifies the specific grounds raised on appeal.'" *State v. Henderson*, 908 N.W.2d 868, 875 (Iowa 2018) (quoting *State v. Brubaker*, 805 N.W.2d 164, 170 (Iowa 2011)); *accord State v. Ross*, 845 N.W.2d 692, 700 (Iowa 2014) ("Trial counsel is required to make a specific objection in his or her motion for judgment of acquittal in order to preserve error."). However, "[i]neffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules." *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010).

Ratliff's trial motion did not include an argument about the malice-aforethought element of the first-degree murder charge. Accordingly, Ratliff's "motion for judgment of acquittal did not preserve the specific arguments he is now making for the first time on appeal." *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996). Nevertheless, Ratliff "argues in the alternative that his trial counsel was

ineffective and we can reach the sufficiency-of-evidence issue that way."
*Henderson*, 908 N.W.2d at 868.

Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Harrison*, 914 N.W.2d 178, 188 (Iowa 2018). Ratliff must show "by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice." *Id.* (quoting *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016)). "[C]ounsel fails his or her essential duty by 'perform[ing] below the standard demanded of a reasonably competent attorney.'" *Id.* (quoting *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001)). "[W]e begin with the presumption that the attorney performed competently" and "avoid second-guessing and hindsight." *Ledezma*, 626 N.W.2d at 142. Ratliff "must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 964 (1984)).

Ratliff claims the State failed to prove he acted with malice aforethought, arguing he did not mean or desire to harm anyone. He claims the shooting of Quinn was accidental, contending that if Quinn had not grabbed for the gun, the gun would not have accidentally gone off.

The court instructed the jury:

> "Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another or in disregard of the rights of another out of actual hatred, or with an evil or unlawful purpose. It may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury. It may be found from the acts and conduct of the defendant, and the means used in doing the wrongful and injurious act. Malice requires only such deliberation that would make a person appreciate and understand the nature of

the act and its consequences, as distinguished from an act done in the heat of passion.

The court further instructed, "'Malice aforethought' is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time." The instructions also provided, "Malice aforethought maybe inferred from the defendant's use of a dangerous weapon." *Accord State v. Green*, 896 N.W.2d 770, 781 (Iowa 2017).

Ratliff does not dispute that he brought a semiautomatic, AK-47 type of gun to the intended transaction in the parking lot, first leaving it in the car, then after an encounter with Quinn, he quickly returned to the car and pointed the gun at Quinn. The use of a gun supports the inference of malice aforethought. Further, while Ratliff claims the shooting was accidental, "if the jury rejected [Ratliff's] [accidental-shooting] argument, it could, but was not required to, infer [Ratliff] acted with malice aforethought from his use of a dangerous weapon." *Id.* We find the record, when viewed in the light most favorable to the State, contained substantial evidence for a rational jury to conclude Ratliff acted with malice aforethought. His claim of ineffective assistance of counsel therefore fails.

### 2. First-Degree Murder—Specific Intent

Ratliff next contends the State failed to prove he specifically intended to kill Quinn in a willful, premeditated, and deliberate manner.

The court instructed the jury that "willful" meant "intentional or by fixed design or purpose and not accidental"; "To deliberate" meant "to weigh in one's mind, to consider, to contemplate, or to reflect"; and to "premeditate" is to think or

ponder upon a matter before acting. The court further instructed the jury that "deliberation and premeditation need not exist for any particular length of time before the act." The court also instructed the jury:

> "Specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind.
> Because determining the defendant's specific intent requires you to decide what he was thinking when an act was done, it is seldom capable of direct proof. Therefore, you should consider the facts and circumstances surrounding the act to determine the defendant's specific intent. You may, but are not required to, conclude a person intends the natural results of his acts.

"Premeditation may be shown through evidence of . . . the nature of the killing including the use of a deadly weapon combined with an opportunity to deliberate." *State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003). "[T]he law does not require any minimum amount of time to premeditate and a few minutes are certainly adequate." *Id.* at 49. "Premeditation [can be] shown by the nature of the crime and the defendant's actions afterwards." *Id.*

"Admissions made by a defendant are evidence." *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993). The "conduct of the defendant subsequent to a crime, including fabrication," can constitute an implied admission, "when such conduct indicates a consciousness of guilt." *Id.* Further, "[a] false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt and the false story is relevant to show that the defendant fabricated evidence to aid his defense." *Id.*

Here, the evidence showed and Ratliff does not dispute that he brought a semiautomatic, AK-47 type gun to the parking lot. Further, Ratliff left the gun in Peter's vehicle when he initially approached Quinn's vehicle. However, he left it

on the passenger seat. After some discussion about the drug deal, Ratliff quickly returned to Peter's vehicle, grabbed the gun, and pointed it at Quinn. Ratliff does not dispute those facts. While Ratliff claimed that the shots were the result of Quinn grabbing and fighting over the gun, multiple witnesses testified that Ratliff fired at least one shot into the vehicle while standing near the front of it, without any interference by anyone. A firearms expert also testified that the gun was not a fully-automatic weapon, so the gun required a manual pull and release of the trigger for each shot. The expert further testified the gun did not have a "hair trigger," which would only require a light trigger pull to shoot the gun. Finally, Ratliff's actions after the shooting, including telling police multiple stories about the shooting and denying he was at the location or had knowledge of the gun, indicate a consciousness of guilt. The jury was free to reject Ratliff's accidental-shooting version of events. Based upon all of the facts and circumstances contained in the record, we conclude the jury could rationally conclude that Ratliff intended to kill Quinn.

### 3. *Willful Injury Causing Serious Injury—Specific Intent*

To convict Ratliff of willful injury causing serious injury, the instructions required the jury to find: (1) Ratliff shot Quinn; (2) Ratliff specifically intended to cause serious injury to Quinn; and (3) Ratliff caused a serious injury to Quinn. As with his other claims, Ratliff focuses his challenge on the specific-intent element of the offense. He argues he did not know Quinn and had no animus toward him, contending the shooting was accidental. Upon our review of the record, we find a rational jury could infer Ratliff had a specific intent to seriously injure Quinn. Ratliff did not dispute that he grabbed a gun and pointed it at Quinn. Further, as indicated

above, multiple witnesses testified that Ratliff fired at least one shot into the vehicle without any interference, despite Ratliff's assertion that the gun only fired because Quinn grabbed and wrestled with the gun. Therefore, we conclude the jury could rationally conclude Ratliff intended to cause serious injury to Quinn.

*4.      Assault with Intent to Inflict Serious Injury—Specific Intent*

To convict Ratliff of assault with intent to inflict serious injury, the instructions required the jury to find: (1) Ratliff did an act intended to either (a) cause pain or injury, (b) result in insulting or offensive physical contact, or (c) place James in fear of immediate physical contact which would be painful, injurious, insulting, or offensive to James; (2) Ratliff had the apparent ability to do the act; and (3) Ratliff's act was done with the specific intent to cause serious injury to James.

While James testified that Ratliff pointed the gun at Quinn, he did not testify that Ratliff pointed the gun at him. Instead James testified that after reaching into Peter's vehicle, Ratliff turned back, pointed the gun at Quinn, and told Quinn to give him everything he had. After grabbing the gun, Quinn and Ratliff wrestled for control of it. The gun was pointed in James's direction as a result of this struggle. The State produced no other evidence that Ratliff specifically intended to injure James. Based upon our review of the record, even viewing the record in the light most favorable to the State, we find there was insufficient evidence to support a conviction of assault with intent to inflict serious injury as to James.

B.      Ineffective Assistance of Counsel

Ratliff next contends his trial counsel provided ineffective assistance by failing to object to the jury instructions pertaining to two lesser-included offenses.

"When a jury convicts a defendant of a greater offense, no prejudice results from the jury considering his guilt of a lesser offense." *State v. Albright*, 925 N.W.2d 144, 157 (Iowa 2019). Given that the jury convicted Ratliff of first-degree murder and willful injury causing serious injury, and not the lesser-included offenses he complains about, counsel's failure to challenge the court's instructions on those lesser-included offenses did not prejudice him. Ratliff concedes as much. Accordingly, this claim of ineffective assistance of counsel fails.

    C.    Admission of Photographs

Finally, Ratliff contests the district court's ruling on the admissibility of photographs of the murder weapon, including several of Ratliff holding the rifle. He contends the trial court erred in admitting the photographs as cumulative to other evidence offered by the State and unduly prejudicial. Ratliff also challenges the use of a photograph admitted as an exhibit of him with the gun during the State's rebuttal argument.

We review the district court's evidentiary rulings for an abuse of discretion. *State v. Einfeldt*, 914 N.W.2d 773, 778 (Iowa 2018). "If a trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable,' an abuse of discretion has occurred." *Id.* (quoting *Buenaventura*, 660 N.W.2d at 50). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *State v. Putman*, 848 N.W.2d 1, 7 (Iowa 2014) (quoting *In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013)). "Even if a trial court has abused its discretion, prejudice must be shown before we will reverse." *Id.*

At issue are exhibits 18 through 24. Exhibits 18 and 19 showed the gun being held in someone's hand but does not show the identity of that person. Exhibits 20 and 21 showed Ratliff holding the gun with the muzzle pointed upwards with his face visible.[2] Exhibits 22 and 23 seem to be the same photograph of an extreme close-up of Ratliff holding the gun pointed at the camera with the muzzle extremely close to the lens. Exhibit 24 is the gun lying on some clothes or bags with no person visible. Before trial, the State moved to admit the exhibits, at which point the defense objected to the photographs as cumulative and overly prejudicial. The court overruled the objection and admitted the photographs. During the testimony of the lead detective, the State published the photographs to the jury. The detective explained exhibits 18 through 23 were recovered from Ratliff's phone after he attempted to delete them and exhibit 24 was recovered from Peter's phone. The State briefly referenced the photographs during its closing argument. The State also used exhibit 22 in its rebuttal argument.

"Relevant evidence is admissible," and irrelevant evidence is not. Iowa R. Evid. 5.402. "Even when evidence is relevant, it 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'" *State v. Taylor*, 689 N.W.2d 116, 123 (Iowa 2004) (quoting Iowa R. Evid. 5.403). Further, the court may exclude relevant evidence if it "needlessly present[s] cumulative evidence." Iowa R. Evid. 5.403.

Ratliff does not contest the relevancy of the photographs. Therefore, the question becomes whether the probative value of the evidence was substantially

[2] Exhibit 21 shows Ratliff wearing the same hat and clothes and in the same location as exhibit 20, however, the image is very blurry.

outweighed by a danger of unfair prejudice. *See id.* "Evidence is unfairly prejudicial if it, '[a]ppeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause the jury to base its decision on something other than the established propositions in the case.'" *State v. Price*, 692 N.W.2d 1, 5 (Iowa 2005) (quoting *State v. White*, 668 N.W.2d 850, 854 (Iowa 2003)). "Weighing probative value against prejudicial effect 'is not an exact science,' so 'we give a great deal of leeway to the trial judge who must make this judgment call.'" *Einfeldt*, 914 N.W.2d at 784 (quoting *Putman*, 848 N.W.2d at 10). "For us to hold the trial court abused its discretion in determining the danger of unfair prejudice created by the admission of evidence did not substantially outweigh its probative value, the complaining party must show that the trial court's action was unreasonable in the light of attendant circumstances." *State v. Buchanan*, No. 03-0230, 2004 WL 1071896, at *3 (Iowa Ct. App. May 14, 2004).

The State argues the evidence provided proof of identity and access to the weapon before the shooting. During the police investigation, Ratliff gave several inconsistent stories about the possession of the gun, including denying all knowledge of the gun and asserting he only received the gun after the shooting in order to dispose of it for another.

Considering the facts and circumstances of this case, the publication of the exhibits to the jury "merely embellished the verbal picture of the events already provided by the testimony" of witnesses. *State v. Munz*, 355 N.W.2d 576, 580 (Iowa 1984). By the time of publication of the photographs, other witnesses had testified to the use of the gun in the shooting and Ratliff's possession of the gun at

the time of the shooting. Further, most of the photographs were recovered from Ratliff's own phone and put knowledge of the murder weapon and the actual weapon in Ratliff's possession before the shooting. This was in direct contradiction to several of Ratliff's statements to the police about his involvement, or lack thereof, in the shooting. Further, "[e]ven if we assume the evidence was cumulative, that is not a sufficient reason, standing alone, to require its exclusion; its admissibility still turns on the trial court's discretion." *Id.* Upon our review of the record, we do not find an abuse of discretion in the admittance of the photographs and their publication to the jury.

Ratliff further argues that the State's use of exhibit 22 in its rebuttal argument was a violation of "golden-rule" doctrine, prohibiting arguments asking the jury "to place themselves in the position of the victim." *State v. Musser*, 721 N.W.2d 734, 754 (Iowa 2006) (quoting *Lucas v. State*, 335 So. 2d 566, 567 (Fla. Dist. Ct. App.1976)). The transcript reflects the State used the exhibit in its rebuttal argument while stating: "We have to rely on evidence, the testimony of those who were there and saw things and heard things and investigated this case. But interestingly enough, we can get a feel from what really happened. That's the last thing Tony Quinn saw before the defendant murdered him." The transcript includes a court reporter's note that at the end of that last sentence: "(indicating)." After the jury left to begin its deliberations, defense counsel made a record about the State's use of the photograph in its rebuttal argument but made no objection and did not move for a mistrial.

The State argues Ratliff failed to preserve error because trial counsel did not object and no claim of prosecutorial misconduct or error[3] was made to the trial court after the State's argument. However, Ratliff argues in the alternative that counsel provided ineffective assistance by failing to object. Therefore, we will proceed to the merits of the claim. The following framework applies to assessing a prosecutorial-misconduct claim raised within an ineffective-assistance-of-counsel claim:

> In analyzing [Ratliff's] ineffective-assistance-of-counsel claim, our first step is to assess whether the record demonstrates, as a matter of law, the existence or absence of a meritorious due process violation. Thus, we must consider whether the prosecutor was guilty of misconduct in the particulars identified by [Ratliff] and whether the record shows [Ratliff] was prejudiced, i.e., denied a fair trial.
> If the record is insufficient to make this determination, we must preserve [Ratliff's] ineffective-assistance claim for a fuller development of the pertinent facts. If, however, the record shows that either element is lacking as a matter of law, we will affirm [Ratliff's] conviction without preserving his due process claim for a later postconviction-relief action.

*State v. Graves*, 668 N.W.2d 860, 869–70 (Iowa 2003).

"[A] prosecutor 'is entitled to some latitude during closing arguments in analyzing the evidence admitted in the trial.'" *Musser*, 721 N.W.2d at 754 (quoting *Graves*, 668 N.W.2d at 874).

> "[A] prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence," but may not suggest that the jury decide the case on "any ground other than the weight of the evidence" introduced at trial. In addition, a prosecutor is not

---

[3] Prosecutorial misconduct occurs when "a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct," or "recklessly disregards a duty to comply with an obligation or standard." *Schlitter*, 881 N.W.2d at 394 (citation omitted). "Prosecutorial error occurs 'where the prosecutor exercises poor judgment' and 'where the attorney has made a mistake' based on 'excusable human error, despite the attorney's use of reasonable care.'" *Id.* (citation omitted).

"allowed to make inflammatory or prejudicial statements regarding a defendant in a criminal action."

*Id.* (quoting *Graves*, 668 N.W.2d at 874).

Here, we find that although the State did not directly ask the jury to put themselves in Quinn's shoes, her comments could be understood to make that inference. However, "[p]rosecutorial misconduct alone does not entitle" Ratliff to his requested relief, as "[t]here must be proof the misconduct resulted in prejudice to the extent [Ratliff] was denied a fair trial." *Id.* at 755. To determine if any prejudice resulted from misconduct, we consider several factors "within the context of the entire trial." *Graves*, 668 N.W.2d at 869 (quoting *State v. Piper*, 663 N.W.2d 894, 913 (2003)). We consider "the severity and pervasiveness of the misconduct, the significance of the misconduct to the central issues in the case, the strength of the State's evidence, the use of cautionary instructions or other curative measures, and the extent to which the defense invited the misconduct." *Id.* (altered for readability).

While we "frown upon the prosecutor's improper appeal to the jury to convict the defendant for reasons other than his guilt as established by the State's evidence," we are unable to say Ratliff was denied a fair trial. *See Musser*, 721 N.W.2d at 757. The district court provided the jury with curative instructions that arguments by counsel were not evidence upon which the jury could base its verdict upon. "A jury is presumed to follow the instructions of the court." *State v. Ondayog*, 722 N.W.2d 778, 785 n.2 (Iowa 2006). Further, the picture in question had already been published to the jury during witness testimony. We find Ratliff cannot show

prejudice, therefore he cannot meet the burden for a prosecutorial-misconduct claim. Accordingly, he cannot show ineffective assistance of counsel.

## III. Conclusion

We find the jury's verdicts for murder in the first degree and willful injury causing serious injury are supported by substantial evidence and therefore affirm the judgments and sentences of the district court for those offenses. We find the State failed to establish sufficient evidence for assault with intent to inflict serious injury. Accordingly, we reverse the judgment and sentence for that offense and remand for dismissal of the charge. We find Ratliff's trial counsel was not ineffective and the court did not abuse its discretion in admitting photographs showing Ratliff holding the murder weapon.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**